```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS

_____
                                    )
LOVEPOP, INC.,                      )
                                    )
                 Plaintiff,         )
                                    )        Civil Action
           v.                       )        No. 17-11017-PBS
                                    )
PAPERPOPCARDS, INC.,                )
                                    )
                 Defendant.         )
_____)
```

**MEMORANDUM AND ORDER**

February 22, 2018

Saris, C.J.

**INTRODUCTION**

This case concerns greeting cards that unfold to reveal intricate three-dimensional designs derived from a paper-cutting art form called kirigami. Plaintiff LovePop, Inc. ("LovePop"), alleges, among other things, that Defendant PaperPopCards, Inc. ("PaperPop"), has infringed its copyrights covering an array of LovePop greeting cards, as well as videos depicting how the three-dimensional designs pop up when the cards are opened.

PaperPop moved to dismiss the copyright infringement claim, arguing that it does not make the cut under Fed. R. Civ. P. 12(b)(6). At a hearing, the Court partially denied the motion as to three of the allegedly infringing cards. After further

1

consideration of the parties' submissions, the Court **ALLOWS IN PART** and **DENIES IN PART** the remainder of PaperPop's motion to dismiss (Docket No. 12).

**FACTUAL BACKGROUND**

The pertinent facts unfold from LovePop's Amended Complaint (Docket No. 28) ("AC").[1]

LovePop, a Delaware corporation with its principal place of business in Boston, Massachusetts, produces three-dimensional pop-up greeting cards. AC ¶¶ 1, 7. It sells the cards primarily through its website, but also at specialty card stores and kiosks in Boston and New York. AC ¶¶ 1, 13. LovePop offers more than 200 pop-up card designs "for virtually every occasion, season and sentiment." AC ¶ 13. The pop-up component inside each card derives from a paper-cutting art form called kirigami, with an assist from advanced design software. AC ¶ 12.

Nine LovePop card designs are relevant to this case: (1) "Rose Bouquet," (2) "Money Tree," (3) "French Flower Cart," (4) "Nativity," (5) "Santa Sleigh," (6) "Hanukkah Menorah," (7) "Willow Tree," (8) "Balloon Bouquet," and (9) "Willow Love

---

[1] LovePop filed its original complaint in June 2017. In September 2017, after argument on the motion to dismiss, LovePop filed an Amended Complaint that added allegations pertaining to one additional LovePop card and one additional PaperPop card. Compare Docket No. 1, with Docket No. 28. Technically, PaperPop still has only moved to dismiss the original complaint and not the Amended Complaint. For the sake of efficiency, and because the issues and arguments largely overlap, the Court will treat the motion as if it were directed toward the Amended Complaint.

2

Scene." AC ¶ 15. Each design is registered as visual art with the U.S. Copyright Office. AC ¶ 15.

In addition, LovePop has created original videos depicting how six of the above designs pop up when the cards are opened. AC ¶¶ 17-18. These videos, posted on LovePop's website, are also registered with the U.S. Copyright Office. AC ¶¶ 17-18.

PaperPop, a New York corporation with its principal place of business in New York, also sells three-dimensional pop-up greeting cards. AC ¶¶ 8, 24. According to the Amended Complaint, PaperPop "slavishly copied" each of the nine LovePop designs mentioned above. AC ¶¶ 2, 30. Similarly, six of these allegedly infringing designs appear in videos posted on PaperPop's website, illustrating how the pop-up displays work. AC ¶¶ 28-29.

As a result, LovePop accuses PaperPop of, among other things, infringing its copyrights in the nine card designs and six videos just described. LovePop's Amended Complaint contains four counts: Count I, copyright infringement, 17 U.S.C. § 501; Count II, trademark infringement, 15 U.S.C. § 1114(1); Count III, trademark infringement, unfair competition, and false designation of origin, 15 U.S.C. 1125(a); and Count IV, common law trademark infringement and unfair competition. AC ¶¶ 59-86. In July 2017, PaperPop moved to dismiss Count I.

**LEGAL STANDARDS**

I.  **Motion to Dismiss**

In reviewing a Rule 12(b)(6) motion to dismiss, a court must "[s]et[] aside any statements [in the complaint] that are merely conclusory" and "construe all factual allegations in the light most favorable to the non-moving party to determine if there exists a plausible claim upon which relief may be granted." Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 353 (1st Cir. 2013). "[C]ourts tasked with this feat usually consider only the complaint, documents attached to it, and documents expressly incorporated into it." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71-72 (1st Cir. 2014). Here, the parties agree that the Court may properly consider exemplars of the cards in question, as well as the relevant videos.

II.  **Copyright Infringement**

"The holder of a valid [visual art] copyright possesses exclusive rights to reproduce and distribute not only exact 'copies' of the [work] but also 'derivative works' based upon it." Coquico, Inc. v. Rodríguez-Miranda, 562 F.3d 62, 66 (1st Cir. 2009) (quoting 17 U.S.C. § 106). "A person who trespasses upon any of these exclusive rights may be held liable for copyright infringement." Id. (citing 17 U.S.C. § 501).

"To prevail on a copyright infringement claim, a party must prove both control of a valid copyright and copying of original

4

elements of the work by the putative infringer." Id. (citing Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)). Here, PaperPop challenges only the second component: the copying of original elements of the copyrighted work.

"That requirement itself involves a bifurcated inquiry. First, the copyright holder must show that, as a factual matter, the putative infringer copied the protected work. Second, the holder must show that the copying was so egregious as to render the allegedly infringing and infringed works substantially similar." Id. at 66-67 (citations omitted). Again, PaperPop prunes its argument down to the second component: substantial similarity.

"Works are substantially similar within the intendment of copyright law if they are so alike that the later (unprotected) work can fairly be regarded as appropriating the original expression of the earlier (protected) work." Id. at 67 (citing Yankee Candle Co. v. Bridgewater Candle Co., 259 F.3d 25, 33 (1st Cir. 2001)). "To gauge substantial similarity in cases involving non-technological consumer products, courts often employ an 'ordinary observer' test." Id. "Under that metric, the allegedly infringing work will be deemed substantially similar to the allegedly infringed work if an ordinary observer would be disposed to overlook any disparities in the works." Id. (citing

5

Concrete Mach. Co. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 607 (1st Cir. 1988)).

When applying this framework, a court must abide by a cardinal rule of copyright law: that it "protects original expressions of ideas, not the ideas themselves." Id. (citing Johnson v. Gordon, 409 F.3d 12, 19 (1st Cir. 2005)). Thus, in assessing substantial similarity, a court "must focus upon the 'constituent elements of the [plaintiff's] work that are original.'" Id. (quoting Feist, 499 U.S. at 361). A court conducts that exercise "by dissecting the copyrighted work and separating its original expressive elements from its unprotected content." Id. at 68. "In performing this dissection, the court should not lose sight of the forest for the trees; that is, it should take pains not to focus too intently on particular unprotected elements at the expense of a work's overall protected expression." Id.

Two further copyright principles are folded into this case: the merger doctrine and the doctrine of scènes à faire. "The merger doctrine denies copyright protection when creativity merges with reality; that is, when there is only one way to express a particular idea." Id. (citing Concrete Mach., 843 F.2d at 606). "The doctrine of scènes à faire denies copyright protection to elements of a work that are for all practical purposes indispensable, or at least customary, in the treatment

6

of a given subject matter." Id. (citing JCW Invs., Inc. v. Novelty, Inc., 482 F.3d 910, 915 (7th Cir. 2007)).

Because "the ultimate question of substantial similarity requires a factual judgment," Harney v. Sony Pictures Television, Inc., 704 F.3d 173, 183 (1st Cir. 2013), it is often "a matter for the trier of fact," Yankee Candle, 259 F.3d at 34 n.5, and therefore ill-suited to resolution at a motion to dismiss. That said, courts have, under the right circumstances, resolved questions of substantial similarity as a matter of law. See Harney, 704 F.3d at 183 (noting that summary judgment may enter where reasonable minds cannot differ as to substantial similarity); Boston Copyright Assocs., Ltd. v. U-Haul Int'l, Inc., No. 13-cv-12826, 2015 WL 666952, at *3 (D. Mass. Feb. 17, 2015) (quoting Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 64 (2d Cir. 2010)) (noting that dismissal for failure to state a claim may be appropriate where court determines that two works are not substantially similar as a matter of law).

## DISCUSSION

### I. The Card Designs

The Court, at a hearing in September 2017, partially denied PaperPop's motion to dismiss as to three of the allegedly infringing designs: "Roses," "Money Tree," and "Santa Sleigh." The remaining designs are in dispute. It also should be noted at

7

this point that LovePop, at the hearing, conceded that it does not seek to assert copyright protection in the idea of a kirigami paper sculpture popping up from the inside of a greeting card. It seeks only to protect the paper sculptures themselves.

    A.   <u>"French Flower Cart" and "Flower Cart"</u>

PaperPop asserts that LovePop's "French Flower Cart" design consists largely of unprotectable elements, such as a rectangular, flower-filled cart equipped with handles, wheels, and a roof. PaperPop then points out a variety of differences between the two designs, including variations in the roofs, handles, window panes, lattices below the windows, flowers inside the cart, and signs attached to the carts. LovePop points to a number of similarities between the designs, including the overall proportions of the carts, as well as the presence of yellow signs hanging off the side of the carts, decorated black wheels, and white flower pots.

Even if certain basic elements of a flower cart (like a rectangular base) are unprotectable, it would seem that "there is no singular manner of depicting" a flower cart through kirigami, and that such an endeavor instead would "involve countless artistic decisions, whether deliberately or intuitively made, concerning the precise size, shape, . . . color, juxtaposition of features," and other aspects of the

cart. Coquico, 562 F.3d at 69. Along those lines, the Court perceives a number of conspicuous similarities between the expressive flourishes in the two designs. For instance, both carts, which are roughly the same size, contain five rows of flowers, latticework on the sides, pitched roofs, curved handles, fanciful wheel designs, and yellow signs dangling from white supports that extend from one side of the cart. Given these similarities in the two designs, it is entirely plausible that an "ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." Concrete Mach., 843 F.2d at 607 (quoting Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir. 1960)). Accordingly, this aspect of PaperPop's motion to dismiss is denied.

 B. "Balloon Bouquet" and "Birthday Box"

 PaperPop asserts that a display of "brightly colored balloons arranged in a bouquet, much like flowers, with a box holding the arrangement, and stars/ribbons also in the arrangement" is so common as to escape copyright protection under either the merger doctrine or the doctrine of scènes à faire.

 However, the expressive components common to the two balloon-based designs are eye-popping. Although the boxes are somewhat different sizes, the outside of each box is decorated

9

with star- and circle-shaped holes. Inside each box are four intersecting supports, creating the appearance of a three-by-three grid. The boxes contain roughly the same number of balloons. Notwithstanding differences in the overall color scheme and the shapes of the balloons, LovePop has presented a plausible claim that an ordinary observer would regard the aesthetic appeal of these two designs as the same. See Concrete Mach., 843 F.2d at 607.

C.  "Nativity" and "Manger"

PaperPop's merger doctrine and scènes à faire arguments are more solidly constructed with respect to the "Nativity" and "Manger" designs. PaperPop argues that there likely are "only a limited number of ways of expressing the idea" of a manger or nativity scene. That is, as PaperPop suggests, a nativity scene is virtually certain to include Baby Jesus, Mary, Joseph, wise men, and livestock inside a barn-like structure, as well as other accoutrements like the Star of Bethlehem. Accordingly, "the burden of proof is heavy on the plaintiff who may have to show 'near identity' between the works at issue" in order to succeed on an infringement claim. Concrete Mach., 843 F.2d at 606-07.

Of course, as wise men (and women) know, the issue here is only whether LovePop has plausibly stated a claim for relief. And LovePop argues that an ordinary observer plausibly could

10

determine that the expressive elements shared between the two scenes are virtually indistinguishable.

The Court observes that many of the figures in each scene have nearly identical silhouettes. For example, both sets of wise men feature one wise man on the left, carrying a spherical object, and two standing close together on the right, with the one in front carrying a square-shaped object. Both scenes feature angels in a similar posture, with seven notches on their wings and three creases in their robes. Further, both barns have roofs with five cross-beams and a quatrefoil shape on the front. Both also have a "front porch" area with latticework that features a similar alternating pattern. Lanterns hang from the ceiling in each design. The centerpiece of each scene is, of course, a Baby Jesus; but both Baby Jesuses are lifting their right hands, are cast in yellow paper, and rest in white cradles.

Because of these similarities, it is plausible that an ordinary observer would overlook the differences between "Nativity" and "Manger," and regard the aesthetic appeal of these two designs as the same, even setting aside the unprotectable aspects. See Concrete Mach., 843 F.2d at 607.

D.   "Hanukkah Menorah" and "Menorah"

PaperPop's argument finally lights up with respect to the "Hanukkah Menorah" design. As discussed earlier, under the

doctrine of scènes à faire, copyright protection does not extend "to elements of a work that are for all practical purposes indispensable, or at least customary, in the treatment of a given subject matter." Coquico, 562 F.3d at 68. Here, that doctrine operates to render unprotectable those elements of a menorah that are indispensable to depicting the idea: a candelabra holding nine candles, with four on each side of a slightly elevated center candle. Because the doctrine of scènes à faire denies copyright protection to those elements, a fact-finder could not consider them in conducting the ordinary observer test. See Yankee Candle, 259 F.3d at 33-34 ("[O]nly the 'protected expression' is relevant to an evaluation of substantial similarity.").

What remains in terms of similarity between the two designs -- both menorahs are gold in color with white candles -- is simply "not sufficiently original to qualify for copyright protection." Id. at 35 (rejecting copyright protection for "collection of common geometric shapes with a particular photographic technique" on candle labels); Concrete Mach., 843 F.2d at 606-07 (limiting scope of copyright protection in concrete deer statue to "discretion[ary]" features like pose, posture, and facial expression). On top of this, the Court notes several aesthetic differences between the two designs: LovePop's candles have orange flames, while PaperPop's are yellow with the

12

centers cut out; LovePop's menorah has a Star of David where PaperPop's has a ring shape; the candelabra arms on each menorah have distinct lines. To the extent LovePop's design is entitled to any copyright protection, the Court concludes that no reasonable fact-finder could find the two designs to be substantially similar based solely on the protected elements (if any). Accordingly, PaperPop's motion to dismiss is allowed with respect to the menorah.

E. "Willow Tree" and "Wisteria Tree"

The final two card-design claims are rooted in a different branch of the merger doctrine: when a copyrighted work and an allegedly infringing work both depict objects found in nature. The First Circuit has explained that such cases present a "problem of proof" because the protected work often derives its essential features from the real-world object, and, of course, "any subsequent artist" is free to draw inspiration from that same object. Concrete Mach., 843 F.2d at 607. Even so, a "reproduction of a natural phenomenon may enjoy copyright protection." Coquico, 562 F.3d at 70. "The determining factors are whether the work possesses original expressive elements and whether the alleged infringer has copied those elements, as opposed to gleaning them from the phenomenon in nature." Id.

LovePop's Amended Complaint compares its "Willow Tree" design to PaperPop's "Wisteria Tree" design. PaperPop argues

13

that LovePop's "Willow Tree" design "mimics nature and thus contains numerous, unprotectable natural elements common to all trees." Moreover, it points out that its design depicts a different species of tree with different color and foliage, which renders the two designs insurmountably dissimilar. LovePop contends that the mere "use of purple rather than green is insufficient to overcome the substantial similarity" between the two designs, which consists of their similar "brown tree trunk[s] . . . decorated with oval-shaped swirls," "drooping foliage," and "a few fallen leaves on the ground around the base of the tree."

This dispute presents a close call better resolved by a trier of fact. A better record is needed to determine whether PaperPop's design depicts a wisteria tree as found in nature or copies protected elements of LovePop's "Willow Tree" design.

F.  "Willow Tree," "Willow Love Scene," and "Willow Tree Love"

Technically, PaperPop has not moved to dismiss LovePop's claim based on these three designs. In any event, the companies' willow tree designs look strikingly similar. For essentially the same reasons just discussed regarding the "Wisteria Tree" design, whether PaperPop's rendering of the willow tree was the result of its own creative efforts, or the result of an effort

to copy one or both of LovePop's designs is a nuanced factual question that the Court cannot resolve at a motion to dismiss.

    G.   <u>Summary</u>

In sum, PaperPop's motion to dismiss is **ALLOWED** with respect to the "Hanukkah Menorah" and "Menorah" designs. The motion is **DENIED** as to the remaining designs.

**II.** **<u>Videos</u>**

LovePop also claims copyright infringement based on videos that the companies have posted to their respective websites depicting their three-dimensional cards in action. PaperPop argues that the videos are not substantially similar because PaperPop's videos depict its cards, while LovePop's videos depict its cards; and because the two sets of videos are aesthetically distinct in terms of camera angle, lighting, color, tone, shadows, and orientation of the cards. Emphasizing that "[t]he cards themselves are the primary creative elements in the videos," LovePop asserts that PaperPop's videos are substantially similar to LovePop's videos "precisely by virtue of the fact that they feature the infringing cards unfolding."

At the hearing in September 2017, LovePop seemed to refine its argument into one based on derivative copyright liability. The argument is twofold: Because LovePop owns copyrights in its card designs, it also owns the exclusive right to produce derivative works based upon those designs. Because PaperPop's

15

cards are so similar to LovePop's cards, PaperPop's videos effectively constitute unauthorized derivative works based upon LovePop's card designs, even though PaperPop's videos actually depict PaperPop's own cards.

Framed this way, the issue raises complex questions of derivative copyright liability that the parties have not adequately briefed. Accordingly, the motion to dismiss regarding the videos is **DENIED** without prejudice.

## ORDER

PaperPop's motion to dismiss (Docket No. 12) is **ALLOWED IN PART** and **DENIED IN PART**.

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge